[No. 12450.   Department Two.   December 11, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Grays Harbor Logging Company et al., Plaintiff*, v. THE SUPERIOR COURT FOR CHEHALIS COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—SELECTION OF ROUTE—FEASIBILITY OF OTHER ROUTES—WAYS OF NECESSITY. The rule that the selection of a route to be condemned by a public service corporation makes a *prima facie* case that the land selected is necessary, and can only be overcome by clear and convincing evidence of bad faith, oppression, or abuse of power in the selection, applies to condemnations by a logging road for a private way of necessity; and this, irrespective of whether or not a proposed change of route is over the land of an owner not a party to the proceeding.

SAME—EVIDENCE—NECESSITY. Evidence that another route over the lands of an owner not a party to the proceeding, was feasible, and could be constructed at a reasonable cost and would do less damage than the selected route, is not enough to show that, in the selection of the route, there was bad faith, oppression, or an abuse of power; nor is it enough to show that the other route might be secured by negotiations with the owners.

SAME—NECESSITY—DETERMINATION. A logging company, seeking to condemn a way of necessity to reach four separate tracts of land, is not to be denied the right because one of the tracts had an outlet by water, where the company was conducting its operations by means of a logging railroad, for which it was already equipped; since the question of reasonable necessity must be determined from the enterprise as a whole.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—EMINENT DOMAIN—TAKING PRIVATE PROPERTY. The taking of private property for private use for the promotion of the general welfare, upon due hearing and the payment of consideration, is not incompatible with the Federal guarantee of due process of law.

Certiorari to review a judgment of the superior court for Chehalis county, Irwin, J., entered October 16, 1914, adjudging a public use and necessity in condemnation proceedings, after a trial to the court.   Affirmed.

[1]Reported in 144 Pac. 722.

*A. M. Abel* and *W. H. Abel*, for relators.

*Bridges & Bruener*, for respondents.

MAIN, J.—The purpose of this action was to acquire by condemnation a private way of necessity. After a hearing, the trial court entered a judgment sustaining the right to condemn. To review this judgment, the cause is brought here by certiorari.

The facts are substantially as follows: The relators are the owners of the NW¼ of Sec. 32, Twp. 19 N., R. 4 W., W. M. in Chehalis county, Washington. The respondent, Coats-Fordney Logging Company, is the owner of sections 30 and 20, the SW¼ of Sec. 10, and the SW¼ of Sec. 8, in the same township. The Weyerhaeuser Timber Company is the owner of section 31, likewise in the same township. The lands of the Coats-Fordney Logging Company have upon them large quantities of valuable timber, all of which lands and timber lie to the north of the NW¼ of Sec. 32, owned by the relators. For some years the Coats-Fordney Logging Company has been engaged somewhat extensively in the business of logging. In the prosecution of this business it has constructed a logging railroad, now about six and one-half miles in length. The lower terminus of this logging road is at tide water in the Wishkah river. This river flows, generally speaking, in a southwesterly direction. Some miles to the east, or southeast of it, the Wynoochee river flows in the same general direction. The logging railroad constructed by the Coats-Fordney Logging Company follows the divide or crown of the ridge between these two rivers. The upper terminus of the road is now at some point in the S½ of Sec. 31, which is owned by the Weyerhaeuser Timber Company. By this condemnation, the Coats-Fordney Logging Company desires to extend its road across the NW¼ of Sec. 32, owned by the relators, and thence in a generally northeasterly direction, for the purpose of logging from the lands above mentioned owned by it. The SW¼ of Sec. 8,

owned by the Coats-Fordney Logging Company, is adjacent to the east fork of the Wishkah river. This is a navigable river for the purpose of floating logs to tide water. None of the other lands owned by the Coats-Fordney Logging Company are upon the river.

Upon the trial, the relators contended that, instead of following the divide and passing through the NW¼ of Sec. 32, there was a feasible route over which a road could be constructed at a reasonable cost across the N½ of Sec. 31 directly into Sec. 30, and thus avoid crossing the relators' land.

There are three questions in this case: (1) Was a way across the N½ of Sec. 31 sufficiently practicable and available to the Coats-Fordney Logging Company to deny it the right to condemn a way of necessity across the land of the relators? (2) Was the fact that the SW¼ of Sec. 8 was upon the east fork of the Wishkah river a sufficient reason to deny the right of condemnation so far as it pertained to reaching that particular tract of timber? (3) Does the law which gives the right to condemn a private way of necessity offend against the due process of law clause found in the 14th amendment to the Federal Constitution?

I.    The relators claim that, instead of seeking to condemn across their land, the NW¼ of Sec. 32, the road should be extended north through the N½ of Sec. 31. As appears from the facts stated, this latter section was not owned by the Coats-Fordney Logging Company. Upon the trial, the relators offered evidence to show "that it is entirely feasible to cross section 31 at a reasonable cost in the building of a logging railroad, to run north to sections 20 and 30 and the SW¼ of Sec. 10 and the SW¼ of Sec. (8), all in 19-8." This evidence, the trial court declined to receive. This it is claimed was error.

The general rule is, that where a public service corporation is seeking to condemn land, that those invested with the power of eminent domain have the right in the first instance

to select the land which, according to their own views, is most expedient for the enterprise, but that the court is invested with power to determine whether specific land proposed to be taken is necessary, in view of the general location, and to finally determine the question of necessity for taking such specific land when there is evidence of bad faith or oppression or an abuse of power in the selection. In order to overcome the *prima facie* case made by the condemners, it is necessary to show by clear and convincing evidence that, in the selection of the proposed route, there was bad faith, oppression, or an abuse of power. In *State ex rel. Postal Telegraph-Cable Co. v. Superior Court*, 64 Wash. 189, 116 Pac. 855, it was said:

"We believe that the correct construction of this statute is that those invested with the power of eminent domain have the right in the first instance to select the land which, according to their own views, is most expedient for the enterprise, and that it invests the court with the power to determine whether specific land proposed to be taken is necessary in view of the general location, and to finally determine the question of necessity for the taking of such specific land when there is evidence of bad faith, or oppression, or of an abuse of the power in the selection. Plainly, the selection by the condemnor is evidence of the highest character that the land selected is necessary for the enterprise, and in the absence of clear and convincing evidence to the contrary, it conclusively established the necessity. It is sufficient to make a strong *prima facie* case, but when convincing evidence is adduced by the owner that the land sought is not reasonably necessary, and that a slight change of location to other of his land will equally meet the necessity of the taker and be of much less damage to the owner, then it is incumbent upon the taker to rebut such evidence, since the refusal to make such change, if unexplained would amount to oppression and be an abuse of the power. *In re Field*, 61 App. Div. 618, 70 N. Y. Supp. 677."

The necessity being first shown, there seems no good reason why the rule of that case should not apply when the purpose of the condemnation is to acquire a private way of neces-

sity.  The reasons which support the rule in the one case would also seem to support it in the other. · The respondents claim that that case is inapplicable, because there the question was the change of route over the same owner's land, while here the proposed different route is over the land of an owner not a party to the proceeding.  It will be assumed, but not decided, that the rule is applicable when the proposed change of route would cross the land of a third party.  The question then arises, should the evidence offered and rejected have been received?  The evidence offered went no further than that the route over the north half of Sec. 31 was feasible, and that the road could be constructed there at a reasonable cost.  This fell short of meeting the requirements of the rule. In order to justify the court in ordering the change of location of the proposed road, it was necessary to show, not only another route which was practicable and that the road could be constructed thereon at reasonable cost, but it was necessary to go further and show by clear and convincing evidence that in the selection of the route sought to be condemned there was bad faith, oppression, or an abuse of power.  The evidence offered does not go to the extent of showing that the route selected by the condemner causes unnecessary damage to the relators' property, and that the route over Sec. 31 would cause much less damage to that property than would the route selected cause to the relators' property.

But the relators claim that the respondents had a right by private agreement with the Weyerhaeuser Timber Company to cross the N½ of Sec. 31.  But we think the evidence does not go this far.  It is true that one of the officers for the respondent company admitted that it had acquired the right through the S½ of Sec. 31 from the Weyerhaeuser Timber Company without any difficulty, and that he presumed if they desired it that they could acquire a route through the N½ thereof.  The route which they had already acquired through the S½ of that section was the one which, when extended, would cross the NW¼ of Sec.

32. If a route were acquired across the N½ of Sec. 31, it would be the result of future negotiations.

II.   If the SW¼ of Sec. 8, which borders upon the east fork of the Wishkah river, was the only property to be reached by the proposed road, it might well be held that there was not a sufficient reason to justify the condemnation of a private way of necessity for a logging road, since from that particular tract there is an adequate outlet by water. The statute provides that when land is so situated with respect to other land that it is "necessary for its proper use and enjoyment to have a private way of necessity," the right of condemnation exists. Laws of 1913, ch. 133, p. 412 (3 Rem. & Bal. Code, § 5857-1 et seq.).

The word "necessary" as used in the statute means reasonable necessity. *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670; *State ex rel. Mountain Timber Co. v. Superior Court*, 77 Wash. 585, 137 Pac. 994. In determining whether a reasonable necessity exists for the condemnation, it is necessary to look at the entire enterprise, rather than to its segregated parts.   The Coats-Fordney Logging Company was conducting its logging operations by means of a logging railroad.   To log in this manner, it was already equipped.   Only one of the four tracts of land which it was seeking to reach was located upon the river. To sustain the right to condemn so far as it pertained to reaching the other three tracts of land, and to deny it as to this one, would not seem very reasonable.   The SW¼ of Sec. 8 was only one of the ten quarter sections included in the enterprise.

III.   The relators' brief shows an exhaustive and painstaking investigation into the question as to whether the state statute giving the right to condemn for a private way of necessity offends against the due process of law clause in the 14th amendment to the Federal constitution.   Were the question an open one in this state, it would present an interesting problem.   In *State ex rel. Mountain Timber Co. v.*

*Superior Court, supra*, it was expressly held that the statute giving the right to condemn a private way of necessity was not incompatible with due process of law as guaranteed by the Federal constitution. That case was heard *En Banc*, and the opinion was concurred in by all members of the court. The question is at rest so far as this court may be concerned.

The judgment will be affirmed.

CROW, C. J., MOUNT, ELLIS, and FULLERTON, JJ., concur.