[No. 12426-9-I.   Division One.   July 15, 1985.]

PETER BEESON, ET AL, *Respondents,* v. HELEN
ALEXANDER PHILLIPS, *Appellant.*

*Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Richard M. Stanislaw, David H. Karlen,* and *Sarah Weaver,* for appellant.

*Schweppe, Krug, Tausend & Beezer, P.S.,* and *J. Ronald Sim,* for respondent Beeson.

*Foster, Pepper & Riviera* and *David Utevsky,* for respondent Golding.

PETRIE, J.*— Defendant Helen Alexander Phillips appeals a decree of appropriation condemning a portion of her property pursuant to RCW 8.24.010 in order to create a 30–foot–wide, permanent, nonexclusive way of necessity in favor of adjoining landowners, plaintiffs Peter and Susan Beeson, husband and wife. Phillips does not challenge the precise size or location of the easement created by the court; neither does she challenge the amount of damages awarded to her by the court. We consider only the issue of whether, under the facts, the trial court erred by creating a way of necessity for vehicular ingress and egress.[1] We affirm the decree.

The raw facts are not in dispute. The Beeson property, located at Dolphin Point on Vashon Island in King County, has no direct access to any public road. It is situated in such a way that the upper and only usable, relatively level portion (approximately 3½ acres) is bounded on the north, east, and southeast sides by a steep bluff, with an average slope close to 60 degrees, that is between 125 and 175 feet

---

*Judge Harold J. Petrie is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1]In her opening brief, Phillips does assign error to the scope of the easement which also permitted underground utilities access to the Beesons. She has not, however, brought before us the portions of the bifurcated trial from which the trial court fashioned the precise location and scope of the easement. Furthermore, in her opening brief, she neither argued nor presented authority to support her assignment of error concerning scope. We do not, therefore, consider it. *In re Eggers,* 30 Wn. App. 867, 638 P.2d 1267 (1982).

high. The property is bounded on the west side, and south-west corner, by other upland property owned by Phillips. On the south, the Beeson property is bounded by upland property owned by defendant, Katharine A. Golding. Mrs. Golding has not appealed the trial court's decree, although portions of her property have also been condemned.

Until 1980, the upper portion of the Beeson property was accessible by vehicle from the west over a road which was built by one of the Beesons' predecessors in title with the permission of Phillips' grandfather, who then owned her present property. Until 1980, the upper portion of the Beeson property was also accessible from the south and south-west via a route extending off a public road, continuing across the top of the bluff onto the Golding and Phillips property, and thence to the Beeson property. Use of this route by the Beesons or their predecessors in title was only occasional and casual. Both these access routes to the upper portion of the Beeson property were barricaded in 1980.

From the northwest, the *lower* portion of the Beeson property is presently accessible at the sufferance of land-owners (one of whom is not a party to this action) via a private road suitable for vehicular traffic. This route joins the right of way of a trail, designated the Bunker Trail, which then continues on around Dolphin Point, abutting the entire length of the lower portion of the Beeson property. The Bunker Trail also services property lying essentially east of the Beeson property and fronting on Puget Sound.

Phillips contends that, because the Beesons have vehicular access to a portion of their property, they cannot now be granted a way of necessity over her property under authority of RCW 8.24.010. That statute provides in part:

> An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is *necessary for its proper use and enjoyment* to have and maintain a private way of necessity . . . may condemn and take lands of such other sufficient in area

for the construction and maintenance of such private way of necessity, . . .

(Italics ours.)

Following trial on the issue of the applicability of RCW 8.24.010, together with the cost and feasibility of constructing a road up the bluff, the trial court visited the site and "found" (1) that the Beesons had satisfactorily shown a reasonable necessity for top of the bluff access to the usable portion of their property; (2) that "proper use and enjoyment" of their property requires vehicular and utility access to that upper portion; (3) that a road constructed up the bluff to the top of their property would not provide adequate or practical access; (4) that the cost of constructing a road up the bluff would be prohibitive and not economically feasible for the Beesons; (5) that a reasonable necessity exists for access to the upper portion of the Beeson property across Phillips' and Golding's upland property.

Phillips has assigned error to all these findings, contending that they are really conclusions of law. We need not enter into the murky area of the law that attempts to distinguish between findings and conclusions. To the extent that these "findings of fact" are raw facts, they are supported by substantial evidence in the record. To the extent that they are inferred facts, they flow logically from other raw facts supported by substantial evidence in the record. To the extent that they are more appropriately categorized as "conclusions of law," we examine their propriety in consideration of our analysis of RCW 8.24.010. We hold simply that, considered from either standpoint, the trial court's ultimate determination was not erroneous under the facts and law.

■ RCW 8.24.010 is a statute which, under limited circumstances, authorizes the judiciary to take property from one individual and give it to another without any showing of a public use. It is, therefore, a statute which must be strictly construed. *Brown v. McAnally,* 97 Wn.2d 360, 644 P.2d 1153 (1982). The core of the public policy behind the

statute's grant of condemnatory authority lies in the admonition that the condemnor's property must be so situate that in order for him to obtain "its proper use and enjoyment", he must of necessity obtain use of another's property. In Washington, that necessity need not be absolute; it must, however, be reasonably necessary as opposed to merely convenient or advantageous. *Brown v. McAnally, supra.* It is, of course, impossible to state a rule which would in all cases fix the dividing line between reasonable necessity and inconvenience. Every case must to a large extent depend upon its own facts. *State ex rel. Erchinger v. Gilliam,* 163 Wash. 111, 300 P. 173 (1931).

Knowledgeable observers of the problem have recently declared:

> If the claimant has free access to some part of his land, he cannot make out a way of necessity to another part just because it would be more convenient. However, while some courts may insist on the land's being landlocked, most recognize a degree of flexibility. Sometimes it is said the claimant is entitled to sufficient access to make "effective use" of his land.

(Footnote omitted.) R. Cunningham, W. Stoebuck & D. Whitman, *Property* § 8.5, at 447–48 (1984).

■ Washington appears to have announced a reasonable necessity rule that holds a taking will not be tolerated unless the necessity is paramount in the sense that there is no other way out or that the cost is prohibitive. *State ex rel. Carlson v. Superior Court,* 107 Wash. 228, 181 P. 689 (1919). Phillips does not seriously challenge the court's determination that the cost of building a road, even given its feasibility, would be prohibitive.[2] Rather, Phillips con-

---

[2]The Beesons purchased the property for $125,000. Four road building experts testified. The trial court rejected the opinions of two experts because their opinions were based on the erroneous hypothesis that the average slope of the bluff was 45 degrees. Another expert declared that it would not be feasible to build such a road. One other set the cost of a road at $400,000. The trial court did not embrace that cost estimate and, indeed, made no express dollar finding as to the cost of construction of a road up the bluff. The trial court did, however, in addition to the challenged findings, enter an unchallenged finding which noted poten-

tends that the most the Beesons could obtain would be condemnation of a right of way to the north connecting with the Bunker Trail. Such a solution (assuming all the necessary parties were before the court) would raise the question of whether the Beesons would then have "effective use" of their property.

Effective use in this case means the ability to erect a residence on this view property and to reach it in a reasonable manner. Conceivably, though most difficultly, a residence could be erected on the upper portion of the land without constructing a road up the steep bluff. Would the Beesons then have effective use of their property without some vehicular access to the top of the bluff? The trial court concluded otherwise; so do we. The question then resolves itself into whether or not the Beesons could obtain "proper use and enjoyment" of their property—with or without the erection of a residence—absent vehicular access from the top of the bluff to the outside world.

In a somewhat similar case, this jurisdiction has held that access to one portion of a condemnor's property does not necessarily preclude his obtaining a vehicular access to other parts of his property not reasonably available without encroaching upon his neighbor's property. *State ex rel. Huntoon v. Superior Court,* 145 Wash. 307, 260 P. 527 (1927). In *Huntoon,* the condemnor owned a 20–acre tract, a large portion of which was permanently covered by water which formed a lake. The court noted that the condemnor's property,

> while not absolutely inaccessible to and from public highways to the west and southwest of the lake, it is manifestly not accessible from any practical standpoint.

*State ex rel. Huntoon,* 145 Wash. at 314.

Beeson is confronted with the same situation. All practical accesses to the upper portion of the property were barricaded in 1980. The cost of building a road up the side of the bluff would be prohibitive—even if construction were

---

tial cost problems with compliance with the state environmental protection act.

feasible. We find no error in the judgment. Judgment affirmed.

COLEMAN and GROSSE, JJ., concur.