[No. 12768-7-II. Division Two. May 30, 1991.]

LAWRENCE S. WAGLE, *Respondent*, v. ROSINA ESTHER WILLIAMSON, *Appellant*.

*Paul R. Roesch, Jr.,* for appellant.

*Lindsey D. Cotterell,* for respondent.

ALEXANDER, J.—Rosina Williamson appeals an order granting Lawrence Wagle a private way of necessity over her property on a route known as the "Orchard Pass" route, rather than an alternative route proposed by her and known as the "Whiskey Flats" route. We reverse and remand.

Wagle has owned a 21–acre parcel of property in Cowlitz County since 1964. There is no direct access to any public road from that property. A county road abuts the southern portion of the property; however, high rock cliffs limit access to that road. Williamson owns the property north of Wagle. Fugitt owns the property to the west. A public road, Fall Creek Road, runs generally north and south along the western edge of the Williamson tract. The diagram on the next page illustrates the location of the various properties.

Between 1964 and 1967, Wagle negotiated with Williamson to obtain easement rights over a road located on Williamson's property known as the Whiskey Flats route. This route, which generally parallels the southern boundary of Williamson's property, is the historic access to the county road from Wagle's property.[1] An understanding was apparently reached between the parties relating to Wagle's use of this route, but an agreement was not formally reduced to writing, and the effort to obtain the easement was dropped.

In 1980, Wagle formed plans to build a residence on his property and he again entered into negotiations with Williamson in order to obtain access to Fall Creek Road. Wagle

---

[1] On at least two occasions (1944 and 1954), the Williamsons granted access to the county road to prior owners of the Wagle and Fugitt parcels. In addition, an instrument also allowed access to the Wagle and Fugitt parcels for purposes of water line construction and tree–cutting activity. Finally, in the purchase contract between Wagle and his vendors, the vendors promised to furnish an access easement via Whiskey Flats for Wagle (at Wagle's expense).

and Williamson agreed that Wagle could have an easement over a route known as the Orchard Pass route for a period of 1 year.

In 1985, Wagle commenced an action in superior court to condemn a private way of necessity across the Williamson property over the Orchard Pass route. At trial, Williamson offered objections to the selected route and proposed the

Whiskey Flats route as an alternative to Orchard Pass. The trial court, believing it had no authority to consider an alternative route, granted the way of necessity over Orchard Pass.

Williamson appealed that decision to this court. We reversed, holding that the trial court erred in not considering the alternative Whiskey Flats route when determining the location of the private way of necessity. *Wagle v. Williamson*, 51 Wn. App. 312, 754 P.2d 684 (1988). We remanded for a determination of whether the Orchard Pass route sought by Wagle is "reasonably necessary for the use and enjoyment of his property."

After the matter was remanded, the Legislature enacted RCW 8.24.025, which provides in pertinent part:[2]

> If it is determined that an owner . . . is entitled to a private way of necessity and it is determined that there is more than one possible route . . . the selection of the route shall be guided by the following priorities in the following order:
>
> . . . .
>
> (3) The relative benefits and burdens of the various possible routes shall be weighed to establish an equitable balance between the benefits to the land for which the private way of necessity is sought and the burdens to the land over which the private way of necessity is to run.

On remand, the trial court entered findings of fact and granted Wagle a private way of necessity over the Orchard Pass route because it concluded it was "more equitable for a private way of necessity" on that route than on the Whiskey Flats route.[3]

Williamson again appealed to this court. She contends that the trial court erred in ruling that Wagle was (1) only required to prove "reasonable necessity" for some means of access; (2) not required to prove "reasonable necessity" for the specific route Wagle desired, and (3) entitled to choose

---

[2]Subsections (1) and (2) are concerned with agricultural land, which is not in issue here.

[3]The parties assume that RCW 8.24.025 is applicable although the proceedings were commenced before the statute was enacted. We therefore do not address the applicability of the statute.

and impose an access easement that would bisect the Williamson property when an alternative route had already been offered. She argues that when a private way of necessity is sought over a specific route on the land of another, and an alternative route is available, the cost of developing the alternative route must be prohibitively expensive before the specific route may be found to be a "reasonable necessity." *State ex rel. Carlson v. Superior Court*, 107 Wash. 228, 233, 181 P. 689 (1919); *Beeson v. Phillips*, 41 Wn. App. 187, 702 P.2d 1244 (1985). On the other hand, Wagle contends that when more than one route is available to serve as the private way of necessity, the court is free to choose the route which is the most equitable.

RCW 8.24.025 states that the court "shall be guided" by the "equitable balance between the benefits to the land for which the private way of necessity is sought and the burdens to the land over which the private way of necessity is to run." The trial court made the following pertinent findings regarding the benefits and burdens:

1. That the property of Respondent is presently being used by Respondent for timber management purposes and this is the purpose for which Respondent intends to use the property in the future.

2. That, in the event Respondent undertook a subdivision of the subject property, [Orchard Pass] will not affect the salability of Respondent's property and any such subdivision would be at least 60 years from this time due to the fact of the present use of the property for timber management purposes.

3. [Orchard Pass] does not adversely affect Respondent's property for timber management purposes.

. . . .

5. That Respondent's property will, from a timber management viewpoint, receive more benefits from [Orchard Pass] than [Whiskey Flats] because [Orchard Pass] goes through the middle of Respondent's property opening the property for side roads as opposed to going down the lower edge of Respondent's property as does [Whiskey Flats].

. . . .

23. The desire of Williamson not to have a road located at [Orchard Pass] has been taken into consideration by the court.

In determining such an "equitable balance" between benefits and burdens, the trial court must be

vested with considerable discretion. However, we conclude that the court abused that discretion in this case. The granting of a private way of necessity is, in effect, a condemnation of part of the burdened land. The power to condemn is an extraordinary one, and should be narrowly construed. *Brown v. McAnally,* 97 Wn.2d 360, 370, 644 P.2d 1153 (1982). In this case, Williamson clearly expressed her opinion that the imposition of a private way bisecting her land was a significant burden on the land. This was more than a "desire", as the trial court denominated it. The remaining findings regarding the burden to the land were based on the conclusion that the land would remain in timber management for the next 60 years. The evidence does not support such a conclusion. While Williamson testified that the land was currently being used for timber production, and that the land had been recently reforested, Williamson did not exclude the possibility that she or a family member might build a residence on the land. The fact that Williamson did not have any present intention to use the land for other than timber management does not lead to the inexorable conclusion that the land would be used solely for timber management for the next 60 years.

In our judgment, the trial court abused its discretion by assigning too little weight to the burdened landowner's opinion as to whether a specific route is more burdensome than an alternative route. Further, the trial court assigned too much weight to the collateral "benefits" that the landowner would receive by imposition of the specific route to which she was opposed. While it may well be that benefits may flow to the burdened landowner from the imposition of a specific private way of necessity, such benefits are not part of the "equitable balance" to be struck by the trial court.

We conclude that the opinion of the burdened landowner, as to whether a specific way of necessity imposes a greater burden than would an alternative route,

must be given considerable weight. In striking the "equitable balance" between benefits and burdens, the party seeking the specific way of necessity must show that the benefits derived from that route are substantially greater than those derived from the alternative route, or that the alternative route is prohibitively more expensive than the specific way of necessity, in order to overcome the burden of the specific way of necessity. *See Dreger v. Sullivan,* 46 Wn.2d 36, 38–39, 278 P.2d 647 (1955);[4] *Beeson v. Phillips,* 41 Wn. App. at 186–87.

This court is not in a position to strike such an "equitable balance". Therefore, this matter is remanded to the trial court for further proceedings regarding the relative benefits and burdens of the Orchard Pass route and the Whiskey Flats route. In weighing the benefits and burdens, the trial court should give substantial weight to Williamson's interest in not having the Orchard Pass route bisect her property, and should determine whether the benefits flowing to Wagle, or the costs to be incurred by Wagle, are substantial enough to outweigh that burden. Williamson's request for attorney fees under RCW 8.24.030 shall abide the trial court's final determination of the private way of necessity.

Reversed and remanded.

PETRICH, A.C.J., and REED, J. Pro Tem., concur.

---

[4]*Dreger* was cited with approval in *Roberts v. Smith,* 41 Wn. App. 861, 707 P.2d 143 (1985), in which the issue of implied easement was integrally related to the question of whether there was necessity to pass over defendant's land.